# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| LORI K. VARGAS, | * |
| Plaintiff, | * |
| vs. | * CIVIL ACTION NO. 17-00220-B |
| NANCY BERRYHILL,<br>Acting Commissioner of Social Security, | * |
| Defendant. | * |

## ORDER

Plaintiff Lori K. Vargas (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. On April 11, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 17). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   **Procedural History**[1]

Plaintiff filed her application for benefits on August 18, 2014.  (Doc. 11 at 77).  Plaintiff alleges that she has been disabled since October 22, 2013, due to breast cancer, no energy, depression, body aches and pains, and continuous headaches.  (Id. at 161, 165).

Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge L. Dawn Pischek (hereinafter "ALJ") on April 22, 2016.  (Id. at 45).  Plaintiff attended the hearing with her counsel and provided testimony related to her claims.  (Id. at 50).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 62).  On June 6, 2016, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 24).  The Appeals Council denied Plaintiff's request for review on April 13, 2017.  (Id. at 5).  Therefore, the ALJ's decision dated June 6, 2016, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  Oral argument was conducted on May 16, 2018.  (Doc. 20).  This case is now ripe for judicial review and is properly before this Court pursuant to

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issue on Appeal

> **Whether the ALJ properly considered the opinions of Plaintiff's treating psychiatrist, Dr. Magdi Tageldin, M.D., and consultative psychologist, John W. Davis, Ph.D.**

## III. Factual Background

Plaintiff was born on July 16, 1969, and was forty-six years of age at the time of her administrative hearing on April 22, 2016. (Doc. 11 at 45, 161). Plaintiff completed high school and two years of college education. (Id. at 51).

Plaintiff has no past relevant work. (Id. at 37, 51-52). At her hearing, Plaintiff testified that she cannot work because she "always feels tired" from going through chemotherapy; she has neuropathy in her legs; and she has trouble focusing. (Id. at 52). Plaintiff testified that she has "good days and bad days." (Id.)

Plaintiff testified that she lives with her parents and her three younger children (ages 17, 12, and 8) and an infant grandchild. (Id. at 51). She takes her children to school, and she picks up her granddaughter from daycare. (Id. at 53). She also helped care for her mother after her mother had a stroke. (Id.). In addition, Plaintiff cooks, does laundry, drives, shops, handles a savings account, uses a checkbook, reads, walks, and visits with family. (Id. at 57). Plaintiff testified that she

3

walks for exercise.  (Id. at 60).

Plaintiff testified that she takes Lexapro for depression/anxiety, that she sees a therapist once a month, and that her anxiety and depression cause her to be nervous and to not want to be around people.  (Id. at 54, 56, 58, 61).  Plaintiff also testified that her medication helps some and that she has completed treatment for cancer and is now cancer free.  (Id. at 54, 62).

**IV. Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla,

---

[2] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**V. Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant

5

proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir.

6

1985)).

**VI. Discussion**

> **Substantial evidence supports the ALJ's assessment of the opinions of Plaintiff's treating psychiatrist, Dr. Magdi Tageldin, M.D., and consultative psychologist, John W. Davis, Ph.D.**

In her brief, Plaintiff argues that the ALJ "reversibly erred" in failing to properly refute the opinions of her treating psychiatrist, Magdi Tageldin, M.D., and consultative psychologist, John W. Davis, Ph.D., both of whom opined that Plaintiff would have "marked mental limitations." (Doc. 12 at 1). Defendant counters that the opinions of Dr. Tageldin and Dr. Davis were inconsistent with the objective record evidence in the case and that substantial evidence supports the ALJ's assessment of the opinion evidence and the RFC in this case. (Doc. 13 at 2). For the reasons detailed herein, the Court finds that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

7

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). However, the opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357

8

F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In the instant case, the ALJ found that Plaintiff has the severe impairments of breast cancer, depressive disorder, attention disorder, and personality disorder. (Doc. 11 at 26). The ALJ also determined that Plaintiff has the RFC to perform a range of light work with the following restrictions: Plaintiff can have no exposure to unprotected heights or hazardous machinery. Plaintiff is limited to simple, routine tasks, with occasional change in routine work setting. Plaintiff can have no direct interaction with the public and can work in close proximity to others but must work independently, not in a team. (Id. at 28).

The ALJ also found that Plaintiff has no past relevant work. (Id. at 37). Based upon the testimony of the vocational expert, the ALJ concluded that she can perform work such as a production assembler, folder, and small products assembler (all light and

9

unskilled). (Id. at 38, 64). Thus, the ALJ found that Plaintiff is not disabled. Having thoroughly reviewed the record in this case, the Court is satisfied that the ALJ's findings related to Plaintiff's RFC and the weight accorded to the opinions of Plaintiff's treating psychiatrist, Dr. Tageldin, and consultative psychologist, Dr. Davis, are supported by substantial evidence.

First, with respect to Plaintiff's treating psychiatrist, Dr. Tageldin, the record shows that on February 17, 2016, Dr. Tageldin completed a Mental Residual Functional Capacity (RFC) Questionnaire and opined that Plaintiff would have constant deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely and appropriate manner, marked limitations in her ability to understand, carry out, and remember instructions, and marked limitations in her ability to complete work-related activities in a normal workday or workweek. (Id. at 379-80).

The ALJ accorded "partial" weight to Dr. Tageldin's assessments. The ALJ found that Dr. Tageldin's opinions in the Mental RFC Questionnaire were excessive and inconsistent with the medical evidence, including his own treatment records. (Id. at 35). Specifically, the record shows that Dr. Tageldin treated Plaintiff from May 2015 to February 2016 for attention deficit hyperactivity disorder (ADHD), irritability, and depression, for which he prescribed Vyvanse, Wellbutrin, and counseling. (Id. at

10

354-87). While there is no question that Plaintiff has been diagnosed with these mental health conditions, Dr. Tageldin's treatment records reflect largely conservative treatment with medication and counseling, which has been adequate at controlling her symptoms. (Id. at 357, 361, 370-71, 373, 387). In fact, Dr. Tageldin's mental examination findings document that Plaintiff reported symptoms of depression, relationship problems with family, inattention, hyperactivity, distractibility, and irritability, but that she was exercising regularly and having no sleep problems, no appetite problems, no suicidal or homicidal ideation, no manic symptoms, no psychotic symptoms, fair insight and judgment, normal speech, organized thoughts, normal orientation and memory, and "good" judgment. (Id. at 357, 361, 370-71, 387). This evidence, which reflects relatively minimal mental health complaints and largely normal psychiatric findings, are inconsistent with the excessive limitations expressed in the Mental RFC Questionnaire completed by Dr. Tageldin.

In addition to being inconsistent with his own treatment records, Dr. Tageldin's opinions are inconsistent with Plaintiff's treatment records from Dr. Brian Heller, M.D., who treated Plaintiff for breast cancer from 2013 to 2016. Dr. Heller's records likewise consistently reflect normal psychiatric examination findings such as no depression, no anxiety, no mania, no mood swings, no insomnia, alert, cooperative, oriented,

appropriate mood and affect, coherent speech, very pleasant, "energy level and mood have . . . improved since starting on antidepressant," "depression improved, continue antidepressant," "doing very well," "no complaints," "looks and feels well," and "continuing to do well." (Id. at 265-66, 269, 271-72, 275, 278, 281, 284, 287, 289-90, 293, 315, 319-21, 338-50, 381-83).

Likewise, Dr. Tageldin's opinions are inconsistent with Plaintiff's treatment records from her treatment providers at the Cardiology Center for the period of September 2014 to April 2015. Those providers consistently noted, on psychiatric examinations, "no sleep disturbances," "no anxiety and no depression," and normal orientation. (Id. at 304-10, 349-50).

In addition, evidence of Plaintiff's activities of daily living reflects that she lives with her parents, her three younger children (ages 17, 12, and 8), and an infant grandchild, that she takes her children to school, that she picks up her granddaughter from daycare, that she helped take care of her mother after her mother had a stroke, that she has no problems with her own personal care, that she cooks, does laundry, makes beds, drives, shops, handles a savings account, uses a checkbook, reads, walks, visits with family, exercises, follows written and spoken instructions well, and gets along "great" with authority figures, although she does not handle stress well. (Id. at 51, 53, 57, 60, 174-80).

The foregoing substantial evidence, on the whole, reflects

successful, conservative treatment for Plaintiff's mental health conditions resulting in largely normal examination findings and adequate control of Plaintiff's symptoms. As the ALJ found, this evidence is inconsistent with the severe limitations expressed by Dr. Tageldin in the Mental RFC Questionnaire dated February 17, 2016. Therefore, the ALJ had good cause to discredit Dr. Tageldin's opinions.[3]

Plaintiff also argues that the ALJ erred in rejecting the opinion of one-time examining psychologist, Dr. John W. Davis, Ph.D., who stated in a Medical Source Statement ("MSS") (Mental) form dated March 18, 2016, that Plaintiff had marked or extreme limitations in understanding, remembering, and carrying out complex instructions, making judgments on complex work-related decisions, interacting appropriately with the public, supervisors, and co-workers, and responding appropriately to usual work situations and changes in a routine work setting, and that the limitations on her ability to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions was mild. (Id. at 398-400).

According to Dr. Davis' treatment notes, Plaintiff reported

---

[3] The ALJ accepted Dr. Tageldin's opinion that Plaintiff had moderate limitations in ability to respond appropriately to customary work pressures and, therefore, the ALJ restricted Plaintiff's work to simple, routine tasks due to her moderate concentration issues. (Doc. 11 at 28, 36).

13

being diagnosed with depression and ADHD in 1984 (when she was fifteen years old), at which time she received in-patient hospital care for one year.[4] (Id. at 401). Plaintiff also reported receiving monthly outpatient mental health treatment beginning in 2015. (Id. at 402). Dr. Davis noted that Plaintiff was taking Wellbutrin and Vyvanse, which was helping her focus and regulating her mood. (Id.). Dr. Davis' examination findings included some anxiety and depression, but normal speech, capacity for a full range of emotional qualities, appropriate emotional responses to thought, content, and situation, normal orientation, normal concentration and attention, normal thought processes, normal thought content, fair judgment and insight, and a full range of activities of daily living including taking care of her children, doing chores, having normal social relationships, and managing her own personal care needs. (Id. at 404-05).

Dr. Davis' impression was "unspecified depressive disorder." (Id. at 405). He further opined that "it is reasonable to expect a favorable response to treatment but it may take several years;" that Plaintiff's "mental state is a function of her general medical condition and is likely to improve or deteriorate correlated with her general medical condition;" that her ability to interact with

---

[4] Plaintiff also reported receiving in-patient mental health treatment for three days at age 16. (Doc. 11 at 402).

14

the public, co-workers, and supervisors is poor; that her ability to understand, remember, and carry out simple and complex instructions is poor; that she could manage any funds that might be forthcoming; and that her mental capacity "in and of itself is not disabling" but should be considered as an add-on factor when considering her general medical condition. (Id. at 398-99, 405-06).

The ALJ accorded partial weight to Dr. Davis' assessments. The ALJ found that Dr. Davis' opinions were internally inconsistent, as well as inconsistent with his own normal mental examination findings and the medical evidence from Plaintiff's treatment providers detailed above. (Id. at 36). The ALJ also noted the absence of any evidence indicating a need for hospitalization or inpatient care for Plaintiff's mental health conditions since she was sixteen years old. (Id.). As the ALJ found, the foregoing evidence is inconsistent with the severity of limitations expressed by Dr. Davis in the March 18, 2016, MSS (Mental) form and in his report. Therefore, the ALJ had good cause to discredit Dr. Davis' opinions.

Plaintiff also argues that the ALJ erred in giving great weight to the opinions of State Agency reviewer, Dr. Harold R. Veits, M.D., who reviewed Plaintiff's medical records on November 13, 2014, and opined that Plaintiff had only a mild restriction in activities of daily living, mild difficulties in maintaining

15

social functioning and concentration, persistence or pace, and no repeated episodes of decompensation. (Doc. 11 at 37, 74, 76). As the ALJ found, Dr. Veits' opinions are consistent with the substantial medical evidence in this case and do not conflict with the credible opinions of any examining sources; thus, the ALJ properly accorded them great weight. See Harris v. Colvin, 2014 U.S. Dist. LEXIS 159749, *25, 2014 WL 5844240, *8 (S.D. Ala. Nov. 12, 2014). Moreover, while Plaintiff is correct that Dr. Veits did not have the benefit of reviewing Dr. Tageldin's or Dr. Davis' evaluations when he rendered his opinions on November 13, 2014, the ALJ did have the benefit of all of Plaintiff's medical records, and Dr. Veits' opinions are consistent with the record as a whole.

The Court further finds, based on the evidence detailed above, that substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform a range of light work, with the stated restrictions.[5] Indeed, Plaintiff has failed to show that any limitations caused by her impairments exceed the RFC and are not accommodated by the RFC and its stated restrictions. For each

---

[5] As the ALJ pointed out, Plaintiff's "symptoms of depressive disorder, attention disorder, and personality disorder and problems with concentration and social interaction are addressed in the limitation to simple, routine tasks, occasional change in routine work setting, no direct interaction with the public, and work in close proximity to others that is independent and not in a team." (Doc. 11 at 37).

16

of these reasons, Plaintiff's claim must fail.[6]

## VII. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED**.

**DONE** this **13th** day of **September, 2018.**

                                        **/s/ SONJA F. BIVINS**
                             **UNITED STATES MAGISTRATE JUDGE**

---

[6] Although Plaintiff has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").